We now have an appeal challenge that spans two cases, United States v. Brennerman and United States v. Black Sand. Specific group, we'd like to hear these together. And though we allotted time in each, I think it makes more sense to give you 10 minutes each, and we'll hear your arguments. Thank you. And may Mr. Waller join me at the podium. Thank you. May it please the court, my name is Miranda Fritz. I represent Mr. Brennerman. As Judge Radji has pointed out, we're here on an appeal from a detention. What we have is a circumstance where my client sits detained in a white collar case, where we are currently preparing for trial. The trial is scheduled to begin in a couple of weeks. This has occurred under circumstances where there is nothing so unusual, nothing so out of the norm in this case, as to support a finding that there are no set of conditions that would ensure his appearance. Just by way of brief background, how did we get here today? This began with an underlying civil case in front of Judge Kaplan. My client was accused, or the corporate defendant was accused, of failure to produce documents. It was in that context that Judge Kaplan referred this matter to the United States Attorney's Office for criminal prosecution. The US Attorney's Office took the matter up, and sure enough, filed a petition against my client for criminal contempt. Now, my client is a British citizen who resides in London and in Nevada with no criminal history. And so at that moment in time, when the criminal charge was filed by the US Attorney's Office, there was a very clear indication of what their view was with respect to bail. There was an ex parte hearing held in front of Judge Kaplan because when they filed a petition that was an ordinary order to show cause, directing my client individually, as well as the corporate entity, to show cause on a particular date in the court as to why there shouldn't be a finding of contempt, they filed that petition with that order to show cause. The immediate response, Judge Kaplan summoned them to his chambers and objected adamantly to what they had done. During the course of that ex parte conversation, the US Attorneys laid out plainly their view that there is no risk of flight, no indication that this is an individual who has any reason to abscond. In fact, the US Attorney's Office recounted to Judge Kaplan that when the petition was filed, the first thing that happened was my client called the prosecutor to find out more about what this meant. My client, by the way, was pro se throughout all of these issues. The corporation was represented by Latham and Watkins, but my client did not have counsel. So he had called the prosecutor. All of this is told to Judge Kaplan, but throughout the proceeding, Judge Kaplan is adamant that the US Attorney's Office should agree that my client would be arrested, that the resources of the US Attorney's Office should be deployed in order to find and arrest him wherever he was. Now, those were the circumstances that existed as of the filing of the criminal charge against Mr. Brenneman. But after that day, after the prosecution had that conversation with Judge Kaplan in chambers, it changed considerably. And so, yes, they did locate. They sure enough, they found Mr. Brenneman. He was, not surprisingly, at his residence in Las Vegas where he's lived for many, many years. And so they arrested him at his residence. We then ended up in front of Judge Colleen McMahon, who is no pushover on these kinds of issues, and the government at that point shifted dramatically. Now arguing for detention, now bringing up things that had occurred 20 years earlier in connection with my client's life, arguing forcefully in front of Judge McMahon that my client should be detained. The issues became so convoluted that Judge McMahon sent us all home and we came back for a further hearing where evidence was produced to Judge McMahon regarding some of the allegations that the government had made. At the conclusion of all of this, after a raft of allegations were made by the government, literally going back decades, Judge McMahon made her decision. She set bail. She did so based on the following. She said, yes, I see that there's a risk of flight here. Yes, there is. But there are also conditions that will ensure his appearance and what were those conditions? Suffice to say that they were strict. Three family members co-signed for a PRB. $100,000 cash was placed and there was an electronic bracelet ordered for him with GPS monitoring. Mr. Burnerman then satisfied all of those conditions of bail. He doesn't actually have a residence in New York and so what we did was we worked with pretrial and arranged for him to occupy a hotel room at the W Hotel in Hoboken, which was less expensive. Pretrial went in there. Everything was set up so that he was rigged so that any time that he moved too far from whatever the land device is, some horrifying siren went off. Some- We understand all this. Okay. You only have two minutes left and you're not at the point of what resulted in your client's detention, which was added charges. What I'm trying to point out is there was only, the only changed circumstance that occurred is after McMahon made that decision. Judge McMahon. Judge McMahon, I apologize. The U.S. attorney then proceeded to indict on what is a $4 million charge. We've got a record in which Judge McMahon thought that the fact that it was only a contempt charge mitigated the risk of flight. And now you've got the added charge and the two judges who detained him thought that that was a factor that tipped the balance the other way. You have to tell us why that's error. We have cases like this. I've been doing this for 25, 30 years. We have cases often where there is a fraud charge. The allegation as here is that there was some misstatement that was made to the financing institution. In this case, ICBC. This was a fraud charge that was pulled from the underlying civil case. It is essentially a rehash of the underlying civil case. This fraud charge and the fact that the government intended to assert it was told to Mr. Brenneman from the moment that he was arrested in Las Vegas. He had absolute knowledge. They were absolutely clear from that moment forward in court and otherwise that they were gonna go ahead and take the underlying civil case in front of Judge Kaplan and that there would be a fraud charge asserted. Nonetheless, and all of this was known to Judge McMahon. Nonetheless, there were conditions that would satisfy. What my point is is there is nothing about those charges. Nothing. It is a $4 million charge where they're not alleging the fraud associated with the underlying transaction. What they're alleging is that he exaggerated where he had offices, employees that he had. He tried to make his business seem more substantial than it actually was and that that constitutes the fraud. He is not, this is not the kind of circumstance that would either cause him to want to flee. What's the guidelines exposure? Roughly 40 months as we calculated it. So this is not anything that he would seek to flee but more importantly, there is no way that he could flee under the conditions that were set by Judge McMahon nor is there any reason to believe that he would destroy or devastate three family members who have come forward to sign these bonds. This case is just not that unusual. There are conditions that would ensure his appearance. We believe the conditions are as set by Judge McMahon. We believe that the client has absolutely no reason, no incentive to flee these charges, nor could he, no travel documents, an electronic bracelet, three family members. There is no reason to and he could not. Thank you. May it please the court. My name is Robert Sobelman. I'm an assistant United States attorney in the Southern District of New York. I represent the United States on this appeal and in the district court below. Neither Judge Kaplan nor Judge Sullivan erred in concluding that no conditions or combination of conditions could reasonably assure the defendant's appearance in court if the defendant were released pending trial. Therefore, Judge Kaplan's and Judge Sullivan's orders detaining the defendant should be affirmed. I want to begin by pointing out that the court's question that's posed here today is not, should Judge McMahon's order be reinstated or should Judge Kaplan's or Judge Sullivan's orders be upheld? The question, Judge McMahon's order is not on review in this court. The question that's presented is, did both Judge Kaplan and Judge Sullivan clearly err in concluding that the defendant was at risk of flight such that no conditions or combination of conditions would reasonably assure his appearance in court? To address just a couple of brief points, one, change circumstances. As Your Honor pointed out, both Judge Kaplan and Judge Sullivan found that the indictment on bank fraud, wire fraud, conspiracy to commit bank and wire fraud, and visa fraud was a very significant change circumstance from the simple criminal petition on criminal contempt. There are now two cases pending against Mr. Brennerman. Judge Kaplan pointed out specifically that just the fact of having the charges brought, whether he was aware of a government investigation in which no charging decision had previously been made or not, is likely to encourage him to flee. That his experience with the criminal justice system in the United States had just changed in a way that could not be undone. That even, and that he would find that even if the indictment subsequently would be dismissed on grounds that the defense counsel has suggested, that he would still find that Mr. Brennerman was such a flight risk that no conditions could be determined. Judge Sullivan reached similar conclusion for similar reasons. I also want to point out that Mr. Brennerman, as defense counsel pointed out, did not appear to be individually represented at some prior period. But Mr. Brennerman, as far as the government can tell, is the only person that is a member of Black Sands. That the company is Mr. Brennerman, that Mr. Brennerman is the company. The employees that have been identified, it appears defense counsel may be conceding, were not real. They were fictitious. And that to the extent that Latham and Watkins represented the company, it essentially represented Mr. Brennerman as well, maybe not as a technical matter. But he certainly had access to counsel. Finally, I just want to clarify, the government's position did change over time. It always viewed, and the record from the ex parte conference with Judge Kaplan is clear, that the government did not object to an arrest warrant and specifically stated that it would be appropriate for the judge to issue one. But from that conference in early March, through Mr. Brennerman's indictment in late May, an enormous amount of investigative efforts. Things changed. Things changed substantially. The amount of information the government learned about Mr. Brennerman and his company was enormous. He has been very effective at perpetrating this fraud for many years. And to outward appearances, it appears to be a real company that might have real operations. That is not the case. The government intends to prove that at trial, at two trials this fall. However, that is why the government's position changed. It was not an indication by any judge or anyone else. It is simply that the facts dictate the way the government approaches Mr. Brennerman and the case. And unless there are any more questions, the government will rest on its papers. Fendon is presently incarcerated. That's correct, Your Honor. Ms. Fritz. All right, so let's focus on the mail and wire fraud indictment. As the changed circumstance and the event that warrants this kind of detention. And I'm gonna ask Your Honors to consider where an individual is alleged to have engaged in a bank fraud based on misrepresenting the extent of his own business operations. No fraud with respect to the transaction, secured financing that would be secured by the assets. Where that is the allegation and there is a $4 million alleged loss. Are these circumstances that support detention? Do you agree that we review only for clear error in this case? I do. I do. And this is, again, having lived this for decades, there is no case that I have ever seen where detention was sought and obtained under these circumstances. This is not an unusual fraud case. And the loss is not so significant as to suggest that there's any incentive to flee. Yes, there is something unusual about this case and we all know it. But the fraud case itself, if Your Honors would simply look at that as a case that is being brought by the U.S. Attorney's Office and consider whether that would possibly warrant detention, the answer is no. The other thing that I would say is the view that there are no conditions that would ensure his appearance seems to be plainly wrong here. At a minimum, there are ample conditions that could even be added to what Judge McMahon did. We could even augment it with the kinds of things that have been done in other white collar cases, including security guards or other constraints. I just want to point out that the government's claim for why the conditions were inadequate is their claim that pretrial services doesn't work on the weekends. It is in their brief. That is their objection to the GPS as a sufficient way to ensure the client's appearance, that they don't work at night or on the weekends. That's what the government said in its brief. We know that's not true. We know that that's not true. Of course they work on the weekends. We actually went back to double check to make sure GPS monitoring is 24-7 or we'd have an awful lot of people that would wait until five o'clock and then decide to go. Thank you. All right. Thank you very much. We're gonna take the matter under advisement.